

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00332-CV

———————————————

J. MICHAEL FERGUSON, P.C., J. MICHAEL FERGUSON, ANSON FINANCIAL, INC., AND MBH REAL ESTATE, LLC, Appellants

V.

GHRIST LAW FIRM, PLLC, AND IAN GHRIST, Appellees

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-287611-16

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I. INTRODUCTION

This appeal follows a jury trial that culminated in the trial court submitting 46 questions to the jury spanning over a dozen claims and counterclaims. After numerous posttrial hearings, the trial court entered judgment on multiple causes of action in favor of appellees/cross-appellants Ghrist Law Firm, PLLC and Ian Ghrist (collectively, "Ghrist") against appellants/cross-appellees J. Michael Ferguson, P.C. ("Ferguson Firm"), J. Michael Ferguson ("Ferguson"), Anson Financial, Inc. ("Anson"), and MBH Real Estate, LLC ("MBH") (collectively "Ferguson Parties"). The judgment specified that Ghrist is entitled to a single recovery not to exceed $220,114.47, as well as attorney's fees. This sum includes an offset to account for $1,821.42 in breach of contract damages awarded by the jury to the Ferguson Firm.

The Ferguson Parties assert 17 issues on appeal, including a dozen challenges to the sufficiency of the evidence to support the jury's verdict. Ghrist asserts two cross-issues concerning the offset of damages for breach of contract. We reverse the judgment against MBH and Anson and render a take-nothing judgment in their favor. We also reverse that portion of the judgment providing for disgorgement of fees. We affirm the judgment in all other respects.

## II. BACKGROUND

### A.    The Fee Sharing Agreement

The Ferguson Firm hired Ghrist after he graduated from law school but before he passed the bar exam. The parties dispute whether Ghrist was employed by the firm after he passed the bar or whether he was employed by Anson, a loan servicing company that was wholly owned and controlled by Ferguson and that was also a client of the Ferguson Firm.[1] Regardless, it is undisputed that Ghrist performed legal services for Ferguson Firm clients. Ghrist also had his own law firm, which Ferguson helped set up, and was permitted to take on his own clients as long as Ferguson approved them.

Ferguson testified that he paid Ghrist a base salary of $42,000. In addition, the firm and Ghrist had an oral fee sharing agreement under which they would split the attorney's fees received on joint cases, 2/3 to the firm and 1/3 to Ghrist. The firm was also entitled to a percentage of attorney's fees received on Ghrist's separate cases, although the parties disagreed on whether it was entitled to 1/3 or 2/3 of those fees.

The fee sharing agreement also provided that the Ferguson Firm would front expenses for joint cases and those expenses would be deducted from any client recovery. Ghrist was not required to repay those expenses. In other words, the firm

---

[1]Ferguson testified that Ghrist was an employee of the Ferguson Firm; Ghrist testified that he was an employee of Anson, based on the fact that his paychecks were issued by Anson.

would receive money for attorney's fees, reimburse itself for its expenses, and then split the fees with Ghrist according to their agreement.

## B. The Boles Litigation Recovery

Much of the dispute among the parties has its roots in a Ponzi scheme run by David Boles and involving his company, Metro Buys Homes. Boles was eventually imprisoned for his part in the scheme, but not before he victimized a real estate investor named Shawn Coker. Coker hired the Ferguson Firm to recover the hundreds of thousands of dollars he lost to Boles and agreed to a contingency fee of 40% of actual collections on the judgment. The firm's written fee agreement with Coker was for a 25% contingent fee but Coker testified that he had been told it was 40% and that he did not remember being told otherwise. Coker also did not recall any agreement concerning the payment of litigation expenses but acknowledged that those expenses appear to have been deducted from the money collected.

The Ferguson Firm filed suit against Boles and Metro Buys Homes in 2010 and obtained a $1.8 million default judgment in 2014. Ghrist, who was hired by the firm after the judgment was obtained, was given the task of collecting on Boles's assets. Ghrist became Coker's primary contact with the firm and it was Coker's understanding that the firm had agreed to pay Ghrist 1/3 of its 40% contingent fee, or 13.33% of the collections on the Boles judgment.

Ghrist developed the idea of using a receivership to facilitate collection on the Boles judgment. In October 2014, the court signed an order appointing Ghrist as

4

receiver and ordering the judgment debtors to turn over various assets to him. In February 2015, the court signed an order applying certain property to partial satisfaction of the Boles judgment. That order provided, "With regard to each property on the attached spreadsheet, [Coker] now owns the real property itself or the note secured by a deed of trust on the property." The value of the assets, most of which were mortgage notes that generated monthly payments ("Boles notes"), was approximately $1 million.

Ghrist, as receiver, engaged Anson to service the Boles notes. The borrowers on the notes paid Anson directly and Anson charged the receivership approximately $600 monthly for its services.

On June 1, 2015, Coker entered a settlement agreement with Jim Diffenwierth, who had accepted fraudulent transfers of property from Boles. By that settlement, Diffenwierth conveyed to Coker all of his right, title, and interest in the legal title and/or deed of trust liens against 23 specifically identified properties ("Diffenwierth notes"). Ghrist signed the agreement as attorney for Coker.

On July 1, 2015, Ferguson informed Ghrist and Coker by email that he had formed MBH and instructed Ghrist to prepare all the notes to be transferred to the new entity. Ferguson also stated that the Ferguson Firm and Coker would be the managing members of MBH and that Ferguson would draft an operating agreement to protect them both. Ferguson never provided the promised operating agreement.

5

Coker and Ferguson both testified that Ghrist was never a member in MBH and the entity's formation documents list only Coker and Ferguson as managing members.

The Boles notes, Diffenwierth notes, and certain other notes identified as "disputed collateral notes" are collectively referred to by the parties as the "MBH Portfolio."

**C.     The Separation Agreement**

Ghrist became upset with Ferguson's failure to timely pay his share of collected attorney's fees under the fee-sharing agreement. When Ghrist complained, Ferguson told him that bookkeeping was behind; he did not deny that the firm owed Ghrist fees. Ghrist was also frustrated because he wanted to practice litigation but Ferguson wanted him to engage in a different kind of legal practice. The relationship between the two deteriorated until they parted ways in late 2015.

Ghrist presented Ferguson with what he characterized as a list of items to be addressed in their split and what Ferguson characterized as the first draft of a separation agreement. They agreed, though, that changes were made by both parties and the result was a two-page agreement between Ghrist and the Ferguson Firm signed on December 4, 2015 ("Separation Agreement").

The Separation Agreement contains the following provisions that are pertinent to this appeal:

6

11. 6712 Plantation Rd., Forest Hill, Texas 76140

    Ian Ghrist has a "Net Equity" interest in the property equal to 1/3 less

    a. Anson's Deficiency Judgment including any legal cost to obtain judgment, filing fees, etc.
    b. cost of acquiring the property with interest
    c. cost [] incurred in remodeling and marketing the property with interest.

    Ghrist shall receive the Net Equity interest of cash or 1/3 of cashflow from Net Equity in house.

14. The funds due to Ian Ghrist due to his 13.33% stake in MBH Real Estate, LLC and property recovered from Cause Nos. 236-269254-13 and 236-269254-13[2] will be paid. The Law Office of J. Michael Ferguson, PC shall first collect $15,000 plus any filing fees incurred in obtaining the original judgment plus interest on those funds as the judgment was obtained prior to Ghrist's involvement in the case.

19. Any fees paid on behalf of Ghrist Law to form Ghrist Law shall be reimbursed:

    a. Filing Fees with Secretary of State
    b. Website fees
    c. Other filing fees, signage fees, if any.

20. J. Michael Ferguson, P.C. (JMF) shall be reimbursed by Ghrist for any monthly fees incurred on or after 12/1/2015 on behalf of Ghrist for websites, Lexis, etc. JMF shall cooperate and help Ghrist in transferring the www.ghristlaw.com domain.

22. Ghrist shall return the Company Credit Card and his office key.

---

[2]Ghrist testified that the two identical cause numbers were the result of an error, and that the cause numbers should have reflected the Boles case and the Diffenwierth case, which had been severed from the Boles case.

This agreement closes any and all matters between Ian Ghrist and/or Ghrist Law and J. Michael Ferguson, PC. If any issue was not addressed in this agreement, it will not be raised at any time in the future.

## D. The Coker Settlement

As a result of a disagreement between Coker and Ferguson concerning the management and ownership of the MBH Portfolio, Coker entered a settlement agreement with Ferguson, the Ferguson Firm, and Anson in July 2016 ("Coker Settlement"). Under that agreement, Coker transferred the Boles judgment to MBH; Ferguson, the Ferguson Firm, and Anson bought out Coker's interest in the MBH Portfolio for $525,493.08; and Coker transferred his interest in MBH to Anson. As a result, according to Ferguson, MBH was the sole owner of the MBH Portfolio and the Ferguson Firm was the sole owner of MBH.

Ghrist represented Coker during the settlement negotiations but did not obtain a conflict waiver from Anson, whom he had previously represented. Ghrist also told Coker that Ferguson could not find the written contract changing the firm's fee agreement with Coker from 25% to 40%. Coker testified that he was shocked to see the fee agreement providing for 25% because the "narrative" he had received from Ferguson was that the agreement was for 40%.

Coker paid Ghrist $50,000 during the settlement negotiations. He testified that the payment was for a "whole body of work" Ghrist performed for him. He also testified that Ghrist did not ask for that payment; Coker chose to pay it completely on his own.

8

## E.    The Reynolds Dispute

Teena Reynolds was a client of the Ferguson Firm when Ghrist first became associated with that firm. She had retained the firm to represent her in a dispute with her brother-in-law over repayment of a debt. The case remained stagnant until Ghrist contacted Reynolds and told her he had been hired by the firm and wanted to speak with her about her case. Ghrist revived the case and obtained a mediated settlement under which the brother-in-law made monthly note payments to Reynolds through Anson. Those payments, as well as Anson's loan service fees, were split 65% to Reynolds and 35% to the firm.

Reynolds later became upset that Anson was not paying her on time and not providing information she requested. She attempted to fire Anson and the Ferguson Firm but the firm refused to return her records to her unless she paid in full what it would have earned in fees from collections on the brother-in-law's note. Ghrist, who had by this time left the Ferguson Firm, represented Reynolds in her dispute with Anson and, during that dispute, filed a complaint against Anson with the Mortgage and Savings Board.

## F.    The Present Lawsuit

### 1.    The Parties' Claims

On September 20, 2016, Ghrist filed suit asserting over a dozen claims against the Ferguson Parties. Those parties responded with a variety of counterclaims. The

evidence adduced concerning those claims and counterclaims is discussed below as it relates to each of the issues on appeal.

## 2. The Jury Verdict

At the close of trial, the jury was asked to consider 46 questions addressing matters relevant to breach of contract, breach of fiduciary duty, conversion, fraud, negligent misrepresentation, quantum meruit, barratry, damages, exemplary damages, and attorney's fees. It returned a verdict containing the following findings:

### a. Breach of the Separation Agreement (Questions 1–7)

The Ferguson Firm and Ghrist each breached the Separation Agreement. The Ferguson Firm breached first and its breach was not excused. Ghrist suffered breach of contract damages of $104,700.83 for past benefit of the bargain damages, $131,636.72 for future benefit of the bargain damages, and $119,000.00 for past "damages after mitigation." The Ferguson Firm suffered breach of contract damages of $1,821.42 for past benefit of the bargain damages and $0 for past "damages after mitigation." The jury also found that the parties intended to include the disputed collateral loans in the Separation Agreement.

### b. Breach of fiduciary duty (Questions 8-13)

A relationship of trust and confidence existed between Ghrist and Ferguson, the Ferguson Firm, and Anson. Also, Ghrist entered into a joint venture with Ferguson and the Ferguson Firm. The Ferguson Firm, Ferguson, and Anson each breached fiduciary duties to Ghrist. Ghrist suffered breach of fiduciary duty damages

10

of $104,700.83 for past benefit of the bargain damages and $131,636.72 for future benefit of the bargain damages. In addition, the Ferguson Firm and Anson charged fees of $56,462.12 to the MBH Portfolio, $7,528.09 of which should be disgorged to Ghrist.

### c. **Conversion** (Questions 14 and 15)

The Ferguson Firm, Ferguson, Anson, and MBH committed conversion, resulting in $234,516.13 in damages to Ghrist.

### d. **Fraud and negligent misrepresentation** (Questions 16–18)

The Ferguson Firm, Ferguson, and Anson committed fraud against Ghrist. The Ferguson Firm and Ferguson also committed negligent misrepresentation. Ghrist suffered damages of $104,700.83 for past economic loss and $131,636.72 for future economic loss.

### e. **Quantum meruit** (Questions 19 and 20)

Ghrist performed compensable work valued at $234,516.13 for the Ferguson Firm and Ferguson.

### f. **Attorney's fees** (Question 21)

Ghrist's reasonable and necessary attorney's fees were $119,000 plus fees for appeal.

### g. **Exemplary damages** (Questions 22 and 23)

The Ferguson Firm and Ferguson acted with malice, gross negligence, or fraud, but the jury assessed $0 in exemplary damages.

11

### h. Counterclaim for breach of a Rule 11 agreement (Questions 27–29)

Ghrist breached a March 9, 2017 Rule 11 agreement and his breach was not excused, but the jury assessed $0 damages.

### i. Counterclaim for breach of fiduciary duty (Questions 30–34)

A relationship of trust and confidence existed between Ferguson, the Ferguson Firm, Anson, or MBH and Ghrist. Ghrist breached fiduciary duties owed to Anson but not to the others. The jury assessed $0 damages. It also found that Ghrist charged Coker $0 in fees and, of that amount, $0 should be disgorged.

### j. Counterclaim for attorney's fees (Questions 41 and 42)

The Ferguson Firm's and MBH's reasonable and necessary attorney's fees were each $119,000 plus fees for appeal.

### k. Rejected counterclaims (Questions 24–26, 35–40, 43, and 44)

The jury rejected counterclaims asserted against Ghrist for breach of the fee-sharing agreement, conversion and barratry, and did not award exemplary damages.

### l. Findings on ownership interests (Questions 45 and 46)

Prior to the Separation Agreement, Ferguson and Ghrist agreed that Ghrist had a 13.33% ownership interest in the MBH Portfolio. In the Separation Agreement, they agreed that Ghrist had a 13.33% ownership interest in MBH and property recovered from the Boles and Diffenwierth litigations.

### 3. The Judgment

Although not specifically delineated in the judgment, Ghrist stated at the hearing on his motion for judgment that he elected to recover against the Ferguson Firm for breach of contract, against Ferguson for fraud, against MBH for conversion, and against Anson for breach of fiduciary duty.[3]

Ghrist acknowledged that the Ferguson Parties were entitled to certain offsets to the damage award and the judgment thus reduces his recovery for past benefit of the bargain damages from $104,700.83 to $96,605.16. The judgment also reduces Ghrist's recovery for conversion and future benefit of the bargain damages by $15,655.20. Although not explained in the judgment, it appears that this reduction was also by agreement of the parties. The judgment then recites that the total amount of damages awarded to Ghrist against the Ferguson Firm is $220,114.47; the total damages awarded against Anson is $220,114.47; the total damages awarded against MBH is $212,586.68; and the total damages awarded against Ferguson is $212,586.68.

The judgment next states that these damage awards are not cumulative and that Ghrist is "entitled to a single recovery of not more than $220,114.47 in total actual damages, not counting pre or post judgment interest, from all Defendants." It further recites that the Ferguson Firm is entitled to damages of $1,841.22 and that that sum

---

[3]The judgment generally recites that Ghrist "elected to recover based on the jury's answers to Questions 1, 2, 5(a), 7, 8, 9, 10, 12, 13, 14, 15, 16, 18(b), 21 and 45 and 46 as the primary basis for the judgment herein entered."

shall be deducted from the damages owed to Ghrist as an offset. Finally, the judgment awards Ghrist's attorney's fees as found by the jury.

### 4. Posttrial and Postjudgment Motions

The parties filed a plethora of motions between receipt of the jury verdict and entry of judgment, as well as after the judgment was entered. The motions that are pertinent to this appeal are discussed below in the context of the issues to which they relate.

All parties filed notices of appeal. The Ferguson Parties raise 17 issues challenging the relief granted to Ghrist and the failure to grant certain relief to the Ferguson Firm and Anson. Ghrist raises three cross-issues challenging the finding that he breached the Separation Agreement and the award of damages to the Ferguson Firm.

## III.    THE FERGUSON PARTIES' APPEAL

### A.    Incorporating Trial Court Arguments by Reference

The Ferguson Parties repeatedly state in their opening and reply briefs that they incorporate by reference arguments they made in numerous documents encompassing hundreds of pages filed in the trial court. They cite no authority authorizing such an expansion of their appellate briefs.

Parties may not incorporate trial court arguments into their briefs by reference. To do so "would be an open door for parties to circumvent the appellate brief [word] limitations" and would reduce appellate briefs "to a simple appellate record reference

14

to a party's trial court arguments." *Guerrero v. Tarrant Cty. Mortician Servs. Co.*, 977 S.W.2d 829, 832–33 (Tex. App.—Fort Worth 1998, pet. denied).  Instead, "[a] claim of error on appeal must be argued in the party's brief; it is insufficient simply to refer the appellate court to the party's trial court arguments." *Allen v. United of Omaha Life Ins. Co.*, 236 S.W.3d 315, 325 (Tex. App.—Fort Worth 2007, pet. denied).  We will therefore consider only the specific arguments articulated in the Ferguson Parties' briefs. *See id.*

## B.     Legal Bars to Recovery

### 1.  Economic Loss Rule (Issue Three)

The Ferguson Parties urge that Ghrist's causes of action other than breach of contract are barred by the economic loss rule.  That rule "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam).

Ghrist argues that the economic loss rule does not apply to strangers to the contract. *See JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, 508 S.W.3d 391, 422 (Tex. App.—Fort Worth 2014, pet. denied), *judgm't withdrawn & appeal dism'd*, 2015 WL 1119894, at *1 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.).  He notes that the supreme court has "applied the economic loss rule only in cases involving defective products or failure to perform a contract." *Sharyland Water Supply*

15

*Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011). But the court in *Sharyland* expressly recognized that it has applied the rule to parties not in privity. *Id.*

The *Sharyland* court also recognized that the economic loss rule does not bar recovery of purely economic losses in a variety of tort actions, including negligent misrepresentation, breach of fiduciary duty, fraud, and fraudulent inducement. *Id.* at 418–19. In addition, the supreme court has specifically declined to extend the economic loss rule to claims of fraudulent inducement, stating that "the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998); *see Matlock Place Apartments, L.P. v. Druce*, 369 S.W.3d 355, 377–78 (Tex. App.—Fort Worth 2012, pet. denied) (recognizing economic loss rule does not bar fraudulent inducement claim). We conclude that Ghrist's claims for negligent misrepresentation, breach of fiduciary duty, fraud, and fraudulent inducement are not barred by the economic loss rule. *See Sharyland*, 354 S.W.3d at 417–18. But the question remains whether that rule bars his claim for conversion.

Conversion is "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997). The gist of Ghrist's conversion claim is that each of the Ferguson Parties wrongfully exercised dominion and control over assets in the MBH Portfolio that Ghrist contends belong to him. The origin of those purported

16

ownership rights is contractual, being found in Ghrist's fee sharing agreement with the Ferguson Firm and the Separation Agreement between the two.

Ferguson, Anson, and MBH are not parties to those agreements. But that fact alone is not sufficient to preclude applying the economic loss rule. *See Sharyland*, 354 S.W.3d at 419 (recognizing that economic loss rule can apply where there is no privity of contract). The more pertinent inquiry is whether "the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman*, 445 S.W.3d at 718.

The opinion in *Brandon v. Wells Fargo Bank, N.A.*, No. 13-18-00393-CV, 2020 WL 2776714 (Tex. App.—Corpus Christi–Edinburgh May 28, 2020, no pet.), is instructive. Wells Fargo Bank sued Brandon for defaulting on promissory notes held by Wells Fargo and serviced by Midland Loan Services. *Id.* at *1. During the litigation, a receiver sold the collateral securing the notes and the proceeds of sale were applied to pay off the balance of the notes. *Id.* Brandon then filed counterclaims against Wells Fargo and third-party claims against Midland disputing their handling of the excess sale proceeds. *Id.* The trial court awarded Brandon a substantial recovery following a bench trial. *Id.*

One of the claims on which Brandon recovered was conversion based on the wrongful withholding of the excess sale proceeds and escrow funds. *Id.* at *12. The court of appeals recognized that "[t]he parties' respective obligations and duties were contractual in nature, deriving from the loan documents." *Id.* It also recognized that

17

the only identified losses were economic injuries based on the loan contract and that Brandon did not present any evidence of an independent injury outside the economic loss associated with that contract. *Id.* The court therefore concluded that the economic loss rule barred Brandon's recovery for conversion. *Id.* It specifically noted that this conclusion was not altered by the fact that there was no contract between Brandon and Midland. *Id.* at *14 n.4.

In the present case, the fee sharing agreement and Separation Agreement are the sources of Ghrist's purported ownership of the assets that are the subject of his conversion claim. Ferguson's, Anson's, and MBH's obligations to collect, hold, account for, and distribute those assets to Ghrist also derive from those agreements. Finally, Ghrist's asserted loss—the value of the assets to which he claims ownership by virtue of the agreements—is purely economic loss associated with those agreements. We conclude that Ghrist's conversion claim is barred by the economic loss rule.

The assertion of the economic loss rule in issue three is sustained as to the conversion claim and otherwise overruled.

### 2. One Satisfaction Rule

In addition to invoking the economic loss rule, the Ferguson Parties contend in issue three that Ghrist's claims for damages are barred by the one satisfaction rule. They do not, however, present any argument or authorities in support of this

18

contention; they merely point out that the jury awarded the same damages on multiple causes of action.

"For an issue to be properly before this court, the issue must be supported by argument and authorities and must contain appropriate citations to the record. *Trebesch v. Morris*, 118 S.W.3d 822, 825 (Tex. App.—Fort Worth 2003, pet. denied) (citing Tex. R. App. P. 38.1). Failure to adequately brief an issue may result in waiver on appeal. *Id.* The "one satisfaction rule" complaint is waived as inadequately briefed. *See id.*; Tex. R. App. P. 38.1(i).

In any event, the judgment specifically recognizes that the jury awarded the same damages for multiple causes of action against different parties and orders that Ghrist is entitled "to a single recovery of not more than $220,114.47 in total actual damages, not counting pre or post judgment interest, from all Defendants." The judgment thus ensures that Ghrist receive only one satisfaction on his claims. The assertion of the one satisfaction rule in issue three is overruled.

### 3. Merger Clause (Issue Eleven)

In their eleventh issue, the Ferguson Parties argue that a merger clause in the Separation Agreement bars all of Ghrist's claims except for breach of contract. The clause at issue reads: "This agreement closes any and all matters between Ian Ghrist and/or Ghrist Law and J. Michael Ferguson, PC. If any issue was not addressed in this agreement, it will not be raised at any time in the future."

19

"A 'merger clause' is '[a] provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document.'" *IKON Office Sols., Inc. v. Eifert*, 125 S.W.3d 113, 126 n.6 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (quoting Black's Law Dictionary 989 (6th ed. 1990)). Ghrist questions whether the contractual provision quoted above is a merger clause at all. While we share this question, we need not decide it to resolve the issue presented.

The only parties to the Separation Agreement are Ghrist and the Ferguson Firm. The so-called merger clause specifies that it closes all matters between those parties. It makes no mention of Ferguson, Anson, or MBH, or any matters between Ghrist and those parties. The Ferguson Parties do not present any argument or authorities establishing that the clause applies to, much less bars, Ghrist's claims against nonparties to the Separation Agreement. Further, it is not necessary to determine whether the clause bars Ghrist's noncontractual claims against the Ferguson Firm because, as is discussed in detail below in connection with issue two, we uphold Ghrist's recovery against the firm for breach of contract.

Issue eleven is overruled.

## C. Admitting Expert Testimony (Issue One)

### 1. The Role of the Courts

The role of a trial court when considering the admissibility of an expert's opinion is not to determine whether that opinion is true or false. *E.I. du Pont de*

*Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). Rather, "the trial court's role is to make the initial determination whether the expert's opinion is relevant and whether the methods and research upon which it is based are reliable." *Id.* In other words, "[t]he trial court is not to determine whether an expert's conclusions are correct, but only whether the analysis used to reach them is reliable." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex. 1998).

We review the trial court's decision on admissibility of an expert's opinion for an abuse of discretion. *See Robinson*, 923 S.W.2d at 558. Thus, we will not disturb that decision unless the trial court "acted without reference to any guiding rules or principles." *See id.*

### 2. Pretrial Motion to Strike

The Ferguson Parties first assert that the trial court abused its discretion by denying their pretrial motion to exclude Brandon Lim's expert testimony. But that motion was not timely filed. An agreed pretrial scheduling order set a deadline of September 8, 2017, to file motions to strike all or part of an expert's testimony. The order further provided that its deadlines could be changed only by Rule 11 agreement signed by all parties or by filing a motion to extend demonstrating good cause for the extension.

The Ferguson Parties filed their motion to strike Lim's testimony on February 20, 2018, over five months after the deadline set in the agreed scheduling order. The record does not reflect that they either obtained a Rule 11 agreement to extend that

21

deadline or filed a motion to extend demonstrating good cause. The trial court did not abuse its discretion by denying the pretrial motion to strike Lim's testimony.

### 3. Trial Objection

During Lim's trial testimony, the Ferguson Parties moved for a Rule 705 hearing. *See* Tex. R. Evid. 705. Rule 705 provides that, before an expert states an opinion or discloses the facts or data underlying that opinion, an adverse party may be permitted to examine him about the underlying facts or data outside the presence of the jury. *Id.* If the underlying facts or data do not provide a sufficient basis for the expert's opinion, the opinion is inadmissible. *Id.*

Outside the presence of the jury, the Ferguson Parties conducted a voir dire examination of Lim and then moved to exclude his opinions as unreliable because his report purportedly contained over $70,000 in errors. The trial court denied the motion.

### 4. Appellate Argument

The Ferguson Parties argue on appeal that Lim's testimony is not relevant or reliable because his expert report contains errors totaling more than $250,000. Their brief contains a chart purporting to show that Lim wrongly classified some income

22

and wrongly excluded some expenses from his calculation of damages.[4] Ghrist responds that the chart of purported errors is not supported by the record.

The Ferguson Parties do not argue that Lim's opinions are unreliable because his methodology was flawed.[5] Their argument, in essence, is that Lim's opinions are wrong. This, however, is not a basis upon which to exclude his testimony. *See Gammill*, 972 S.W.2d at 728 (stating court determines only if expert's method is reliable, not if conclusions are correct); *Robinson*, 923 S.W.2d at 558 (stating court's role is not to determine truth or falsity of expert opinion). The Ferguson Parties' complaints about Lim's opinions go to their weight, not their admissibility. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 40–41 (Tex. 2007); *Heritage Operating, L.P. v. Rhine Bros.*, LLC, No. 02-10-00474-CV, 2012 WL 2344864, at *10 (Tex. App.—Fort Worth June 21, 2012, no pet.) (mem. op.).

The Ferguson Parties extensively cross-examined Lim and pointed out what they perceived to be errors in his calculations and conclusions. It was then up to the

---

[4]The Ferguson Parties' brief also discusses a deposition taken of Lim in a different case. We will not consider that discussion because the deposition was not before the trial court and is not a part of the appellate record. *See Ahmed v. Sosa*, 514 S.W.3d 894, 896 (Tex. App.—Fort Worth 2017, no pet.) (stating court will not consider document not formally part of appellate record).

[5]The Ferguson Parties state in their brief that "Lim did not prepare his reports and testimony using methodology in accordance with Generally Accepted Accounting Principles (GAAP)." They do not, however, present any argument that this failure caused Lim's expert opinions to be unreliable. That issue is waived as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

jury—not the trial court—to determine what weight to give those calculations and conclusions. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (explaining that jurors are the sole judges of the credibility of witnesses and the weight to be given their testimony).

The trial court did not abuse its discretion by denying the Ferguson Parties' request to exclude Lim's expert opinions. Issue one is overruled.

## C.    Sufficiency of the Evidence

### 1.  Standards of Review and Preservation of Error

#### a.  Legal sufficiency

Whether there is legally sufficient evidence to support a jury finding is determined by "viewing the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 807.  A legal sufficiency challenge will be sustained only if "(1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam).

A legal sufficiency challenge must be preserved for review by (1) objecting to the charge, (2) moving for directed verdict, (3) moving to disregard the finding, (4)

24

moving for judgment notwithstanding the verdict, or (5) moving for new trial. *Hutchison v. Pharris*, 158 S.W.3d 554, 562 (Tex. App.—Fort Worth 2005, no pet.) (citing *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991)). The Ferguson Parties preserved their various legal sufficiency challenges by objecting to the jury charge, moving to disregard certain jury findings, and filing several motions for judgment notwithstanding the verdict.

### b. Factual sufficiency

Factual sufficiency is assessed by considering and weighing all of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). A fact finding will be set aside under this standard only if it is "so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g)). A complaint that the evidence is factually insufficient to support a jury finding must be raised in a motion for new trial to be preserved for appellate review. Tex. R. Civ. P. 324(b)(2); *Hutchison*, 158 S.W.3d at 562.

The Ferguson Parties filed several postjudgment motions in which they requested that the court grant a new trial. But the basis for this request in each motion was the Ferguson Parties' assertion that they were entitled to a mistrial. None of these motions contains a request for a new trial based on factual insufficiency of the evidence.

25

The Ferguson Parties' "Ninth Motion For Judgment Non-Obstante Verdicto And Supplemental Motion For Mistrial And For New Trial" does contain assertions of factual insufficiency as a basis for requesting a new trial. But a motion for new trial must be filed within 30 days after the judgment is filed. Tex. R. Civ. P. 329b(a). The judgment in this case was signed on October 9, 2018. The thirtieth day following that date was November 8, 2018. The ninth motion was filed on November 9, 2018, one day late. As a result, that motion is ineffective to preserve any factual sufficiency challenges for our review. *See id.*; *Defterios v. Dall. Bayou Bend, Ltd.*, 350 S.W.3d 659, 664 (Tex. App.—Dallas 2011, pet. denied) ("To preserve a factual sufficiency challenge for appeal, a party must present the specific complaint to the trial court in a motion for new trial.").

Many of the Ferguson Parties' issues on appeal are phrased in terms of whether there is "any evidence or legally sufficient evidence" to support a particular jury finding. Other issues are phrased in terms of whether there is "any evidence or sufficient evidence." Still others refer to the failure to award certain relief as being "manifestly unjust and against the great weight and preponderance of the evidence." Insofar as these issues are intended to assert factual insufficiency of the evidence, they are not preserved for our review. Our discussion of the Ferguson Parties' sufficiency issues is therefore confined to the legal sufficiency of the evidence.

26

## 2. **Breach of the Separation Agreement** (Issue Two)

In issue two, the Ferguson Firm challenges the legal sufficiency of the evidence to support the jury's finding that it breached the Separation Agreement. It contends that Ghrist had agreed that he would not receive any payment from the Ferguson Firm until all expenses he owed to the firm were paid. The firm asserts that undisputed evidence shows that Ghrist owed it expenses at the time suit was filed and that Ghrist did not present any evidence that the firm owed him anything as of that date. The firm concludes that it could not have breached the Separation Agreement because it had no obligation to pay Ghrist as long as he owed it any money.

The premise underlying the Ferguson Firm's argument—that Ghrist was required to repay all of the expenses under every paragraph of the Separation Agreement before he was entitled to receive payment under any of those paragraphs—was hotly disputed. Ferguson testified that he considered all of the Separation Agreement provisions to be intermingled and stated, as an example, that Ghrist would not be entitled to any payment under paragraph 14 of the agreement (concerning payments on the MBH Portfolio) until he had paid all of the expenses he owed under paragraph 11 (concerning expenses on the Plantation property). Ghrist denied having discussed any agreement to that effect.

In addition, the Separation Agreement itself does not support the Ferguson Firm's premise. The agreement is set out in 13 discrete paragraphs (strangely numbered 10 through 22). There is no language making any payment due to Ghrist

27

under one paragraph contingent on his payment to the firm under any other paragraph. For example, paragraph 14 recites that funds due to Ghrist relating to the Boles and Diffenwierth litigations "will be paid," and provides that the firm "shall first collect $15,000 plus any filing fees incurred in obtaining the original judgment plus interest on those funds." Paragraph 11 recites that Ghrist has a "net equity" interest in the Plantation property equal to 1/3 less certain costs relating to acquiring, remodeling, and marketing the property. It then provides that "Ghrist shall receive the Net Equity interest of cash or 1/3 of cashflow from Net Equity in house." Neither paragraph 11 nor paragraph 14 refers to the other and nothing else in the agreement ties the parties' obligations under one paragraph to their obligations under another.

The jury could reasonably have rejected the Ferguson Firm's interpretation of the Separation Agreement and concluded instead that the firm owed Ghrist under paragraph 14 when it had collected the expenses due under that paragraph, regardless of the status of payments due under paragraph 11 or any other provision of the agreement.[6] For that reason, the premise underlying the Ferguson Firm's first issue is faulty and the issue may be overruled on that basis alone.

---

[6]No party has asserted that the Separation Agreement is unambiguous and should be construed as a matter of law.

Nevertheless, the issue also lacks merit because the record contains evidence that, even accounting for all of the expenses identified in the Separation Agreement, the Ferguson Firm owed Ghrist money at the time Ghrist filed suit. Lim's expert report demonstrates that as of September 20, 2016 (the date Ghrist filed suit), the total note balance owed to Ghrist was $153,781.37. The total cash owed to Ghrist was $61,237.45 and the outstanding expenses relating to Ghrist's law firm expenses totaled $1,821.42. The net cash balance owed to Ghrist was thus $59,416.03. Adding that amount to the note balance owed results in a total amount owed to Ghrist of $213,197.41.[7] Lim explained each of these calculations to the jury and testified that, in reaching the amount owed to Ghrist, he deducted all of the fees and expenses Ferguson provided to him.

Lim's expert report and Lim's accompanying testimony provide evidence that, even lumping together all of Ghrist's obligations under the Separation Agreement, the Ferguson Firm owed him a substantial sum at the time Ghrist filed suit. The jury could reasonably have found from that evidence that the firm's failure to pay that sum was a breach of the Separation Agreement. The evidence is therefore legally sufficient to support that finding.

---

[7] Lim's calculation appears to be off by one cent. $153,781.37 + $61,237.45 – $1,821.42 = $213,197.40 not $213,197.41.

29

The Ferguson Firm also contends in issue two that the parties entered into two Rule 11 agreements that modified the Separation Agreement and that there is no evidence that it breached either of those agreements. The first agreement provided that payments from the MBH Portfolio would be made in trust to Ghrist's attorney and that a $5,000 payment would be made to Ghrist. But the parties also agreed that they still disputed who was entitled to those funds and the trial court acknowledged that the purpose of the agreement was "to just get us off the docket today." Nothing in the agreement indicates any intent by the parties to modify the Separation Agreement.

The Ferguson Firm describes the second Rule 11 agreement as providing that certain payments would be made into the registry of the court. It cites to appendix 28 to its brief but that document is the same as appendix 27, which is the first Rule 11 agreement just discussed. We decline to search the voluminous record for evidence of a second Rule 11 agreement. In any event, the Ferguson Firm does not explain how an agreement to pay funds into the registry of the court during the course of litigation constitutes a modification of the contract that is the subject of that litigation.

The jury's breach of contract finding against the Ferguson Firm is expressly limited to breach of the Separation Agreement. We have determined above that there is legally sufficient evidence to support that finding. Issue two is overruled.

### 3. Benefit of the Bargain Damages (Issue Four)

The trial court submitted two questions asking the jury to find Ghrist's benefit of the bargain damages. Question five inquired about those damages in the context of Ghrist's breach of contract claim, and question eleven made the same inquiry in the context of his breach of fiduciary duty claim. The jury was instructed in both contexts that "[l]oss of the benefit of the bargain means the difference, if any, between the value of the agreement that was bargained for and the value of what was received, if anything."

The Lim report states that, as of December 31, 2017, the net cash balance owed to Ghrist was $107,127.11 and the jury found that Ghrist's past benefit of the bargain damages were $104,700.83. The Lim report also states that the total note balance owed to Ghrist was $131,636.72 and the jury found that Ghrist's future benefit of the bargain damages were that same amount. As previously explained, the judgment reduced the jury's past award to $96,605.16 and the future award to $115,981.52.

In their fourth issue, the Ferguson Parties contend that the trial court erred by submitting benefit of the bargain damages to the jury and that there is legally insufficient evidence to support the jury's findings on those damages. Because a court is required to submit to the jury requested questions that are supported by the pleadings and any evidence, the contention that the court should not have submitted the benefit of the bargain questions is subsumed within the contention that the

31

evidence is legally insufficient to support the jury's verdict.[8] *See Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992) (explaining that trial courts are required to submit requested questions to the jury if pleadings and any evidence support them); Tex. R. Civ. P. 278 (providing court shall submit questions raised by pleadings and evidence).

The Ferguson Parties first argue that there is no evidence to support any damages because Lim's testimony and report should have been excluded. We have determined above that the trial court did not abuse its discretion by admitting that evidence.

The Ferguson Parties next assert that Lim's testimony and report do not detail the alleged loss of the benefit of the bargain, the jury's verdict is not supported by the application of any accounting from Lim's testimony or report, and the testimony and report do not contain any evidence of the "value" of the loss of Ghrist's benefit of the bargain. They simply state these complaints without presenting any supporting argument or citation to authorities. This portion of issue four is inadequately briefed and, as a consequence, is waived. *See Trebesch*, 118 S.W.3d at 825; Tex. R. App. P. 38.1(i).

The remainder of the Ferguson Parties' arguments under issue four consist of disagreements with the content of Lim's testimony and report. For example, they

---

[8]The Ferguson Parties raise these same contentions concerning the submission of "damages after mitigation," but we need not address those complaints because the judgment does not contain an award for those damages.

32

argue that the Lim report does not account for all of the expenses Ghrist owed. Lim repeatedly testified, though, that he relied on Ferguson to supply the data included in his report, that he included in that report all of the expenses Ferguson disclosed to him, and that he relied on Ferguson for the accuracy of the data.

Regardless of any disagreement the Ferguson Parties may have with Lim's testimony and report, the fact remains that that they constitute evidence on which the jury was entitled to rely. The Ferguson Parties subjected Lim to extensive cross-examination and presented considerable testimony explaining their own theory of what was owed to and by Ghrist. The jury was the sole judge of the credibility of the witnesses and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819. That the jury accepted Ghrist's version of damages rather than the Ferguson Parties' version does not render the evidence insufficient to support its assessment of damages.

We acknowledge that the jury verdict appears to include amounts that the parties agreed should be credited to the Ferguson Parties, such as a $5,000 payment made to Ghrist. But even if we were to conclude that the evidence does not support including those amounts, there is no reversible error because the trial court later applied the agreed credits to reduce Ghrist's recovery in the judgment. In other words, the error did not probably cause rendition of an improper judgment. *See* Tex. R. App. P. 44.1.

33

The Ferguson Parties have not demonstrated that the evidence is legally insufficient to support the jury's findings on benefit of the bargain damages. Issue four is overruled.

### 4. Joint Venture (Issue Nine)

Ferguson and the Ferguson Firm challenge the legal sufficiency of the evidence to support the finding that they entered into a joint venture with Ghrist. The formation of a joint venture is governed by the same law as governs partnerships. *See* Tex. Bus. Orgs. Code Ann. § 152.051(b) (providing "an association of two or more persons to carry on a business for profit as owners creates a partnership, regardless of whether . . . the association is called a 'partnership,' 'joint venture,' or other name").

The Business Organizations Code lists five factors to consider in determining whether a partnership or joint venture exists:

> (1)  receipt or right to receive a share of profits of the business;
> (2)  expression of an intent to be partners in the business;
> (3)  participation or right to participate in control of the business;
> (4)  agreement to share or sharing:
>       (A) losses of the business; or
>       (B) liability for claims by third parties against the business; and
> (5)  agreement to contribute or contributing money or property to the business.

*Id.* § 152.052(a). While the common law required proof of each of these factors, the statute does not. *See Ingram v. Deere*, 288 S.W.3d 886, 896 (Tex. 2009) (noting in the context of construing a predecessor statute that formation of a partnership is now determined by the totality of the circumstances).

34

The source of any joint venture between the parties must be the oral fee sharing agreement rather than the Separation Agreement. The fee sharing agreement governed the parties' relationship in the context of the present and future representation of clients; the Separation Agreement evidenced the termination of that relationship. Ghrist testified that he and the Ferguson Firm were engaged in a joint venture to represent clients and to split the attorney's fees 2/3 to the firm and 1/3 to himself. He further testified that each individual case was a separate joint venture.

Ferguson and the Ferguson Firm argue that there can be no joint venture because there is no evidence that Ghrist had any right of control or that he agreed to share business losses. Ghrist responds, in reliance on *Ingram*, that he was not required to present evidence of those factors and that whether the parties entered a joint venture is determined by the totality of the circumstances. *See id.* 895–96.

Ghrist is correct that, in the usual case, a party seeking to establish a joint venture need not prove every element listed in Section 152.052 or required by the common law. *See id.* But the sufficiency of the evidence is not measured by the usual case. Rather, it is measured by the particular charge given to the jury when there has been no objection to that charge. *Green v. Dall. Cty. Schs.*, 537 S.W.3d 501, 506 (Tex. 2017) (per curiam); *see Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005).

The jury in this case was instructed that "[a] joint venture must be based on an agreement that has *all the following elements*: 1. A community of interest in the venture[,] 2. An agreement to share profits, 3. An express agreement to share losses, and 4. A

35

mutual right of control or management of the venture." [Emphasis added.] The record does not reflect any objection to this instruction. The instruction thus governs our sufficiency review and Ghrist's failure to present sufficient evidence of any of the listed elements will require reversal.

We need look no further than the element of an agreement to share losses. The Ferguson Firm fronted the expenses for cases that were worked jointly with Ghrist, and those expenses were then reimbursed from the client's recovery. The firm took the risk that those expenses would not be recouped if it did not obtain any recovery for the client. Ghrist, on the other hand, had no liability to pay any expenses that were not reimbursed by the client.

Reimbursed case expenses are not losses. Thus, deducting those expenses before splitting attorney's fees under the fee sharing agreement does not constitute a sharing of losses. Unreimbursed expenses that exceed collected fees, such as expenses fronted on cases that ultimately result in no recovery, are losses. But the evidence is undisputed that Ghrist did not agree to pay any portion of those unreimbursed expenses. In other words, he did not agree to share losses.

The evidence is legally insufficient to support a finding that Ghrist agreed with either Ferguson or the Ferguson Firm to share losses. As measured by the charge submitted to the jury, the evidence is legally insufficient to support the finding that Ghrist entered into a joint venture with Ferguson or the Ferguson Firm. *See Green,*

36

537 S.W.3d at 506 (explaining that sufficiency of the evidence is measured by the charge).  Issue nine is sustained.

### 5.  Breach of Fiduciary Duty (Issue Eight)

"Generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).  In their eighth issue, the Ferguson Parties contend that the evidence is legally insufficient to support findings on each of these elements against the Ferguson Firm, Ferguson, or Anson.  We need not consider these issues in relation to the Ferguson Firm because we have concluded above that the firm is liable for breach of the Separation Agreement, the claim on which Ghrist elected to recover.  A finding that it is also liable for a breach of fiduciary duty would not alter the judgment against the firm and is therefore not necessary to the final disposition of this appeal.  *See* Tex. R. App. P. 47.1.

Texas law recognizes that certain formal relationships, such as an attorney-client or trustee relationship, give rise to fiduciary duties as a matter of law.  *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005) (per curiam) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002)).  It also recognizes "an informal fiduciary duty that arises from 'a moral, social, domestic or purely personal relationship of trust and confidence.'"  *Id.* (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)).  The courts do not, however, create

37

informal fiduciary relationships lightly. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

"To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem.*, 964 S.W.2d at 288. Prior arms-length transactions for the parties' mutual benefit do not establish a basis for a fiduciary relationship, nor does subjective trust create such a relationship. *Meyer*, 167 S.W.3d at 331; *Associated Indem.*, 964 S.W.2d at 288.

It is undisputed that there was no formal relationship between Ghrist and Ferguson that would give rise to any fiduciary duties between the two. There was a formal attorney-client relationship between Ghrist and Anson, but given that Ghrist was the attorney and Anson was the client, that relationship did not give rise to any fiduciary duties owed by Anson to Ghrist. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 154 (Tex. 2004) (recognizing attorneys owe clients fiduciary duties). The question, then, is whether there is evidence of an informal fiduciary duty owed to Ghrist by Ferguson or Anson as a result of a special relationship of trust and confidence existing prior to, and apart from, the Separation Agreement.[9] *See Meyer*, 167 S.W.3d at 331; *Associated Indem.*, 964 S.W.2d at 288.

---

[9]We focus on the Separation Agreement because there is no evidence that Ghrist had any relationship at all with Ferguson or Anson prior to the fee sharing agreement.

Ghrist testified that he believed Ferguson and the defendant entities, which include Anson, owed him a fiduciary duty because they were "holding and being responsible for the monies that were being collected and also for the accountings that were being done for those monies," a percentage of which belonged to Ghrist. He also testified that he trusted Ferguson with this money because the fee sharing agreement had worked many times before. Ghrist further explained that he believed Ferguson owed him fiduciary duties because Ferguson had the authority to direct what happened to the money held by the entities and was the "real person" whom Ghrist contacted when dealing with those entities.

Ghrist's testimony is insufficient to establish the existence of a fiduciary relationship with either Ferguson or Anson. While he testified that he trusted Ferguson, his subjective trust cannot create such a relationship. *See Meyer*, 167 S.W.3d at 331; *Associated Indem.*, 964 S.W.2d at 288. In addition, Ghrist's relationship with Ferguson prior to the Separation Agreement consisted of arms-length business transactions for their mutual benefit. *See Meyer*, 167 S.W.3d at 331; *Associated Indem.*, 964 S.W.2d at 288. Ferguson and Ghrist worked together to provide legal services to clients. Ghrist was permitted to choose which cases he participated in and was also permitted to represent clients independently of Ferguson and his firm. Ferguson and his firm benefitted from Ghrist's assistance on cases and from receiving a portion of the fees he generated; Ghrist benefitted from participating in Ferguson's cases and from receiving a portion of the fees Ferguson generated.

39

Ghrist's relationship with Anson, other than the attorney-client relationship previously noted, also consisted of arms-length business transactions for their mutual benefit. Ghrist, as receiver, hired Anson to collect from the borrowers on the Boles notes. Anson, in return, was paid a fee for its services.

The core of Ghrist's position that Ferguson and Anson owed him fiduciary duties is that they controlled money or property that belonged to him. Ghrist cites *In re Harwood*, 637 F.3d 615 (5th Cir. 2011), and *McBeth v. Carpenter*, 565 F.3d 171 (5th Cir. 2009), for the proposition that such control is sufficient to establish a fiduciary relationship. But both of those cases concerned parties who were in a formal partnership relationship. *See Harwood*, 637 F.3d at 620-22; *McBeth*, 565 F.3d at 177-78. No such relationship exists in this case; *Harwood* and *McBeth* are inapposite.

There is no evidence that Ghrist's business relationship with Ferguson or Anson rose to the level of a special relationship of trust and confidence. Consequently, the evidence is legally insufficient to support the jury's finding that such a relationship existed. Without that finding, there is no basis upon which to find that either Ferguson or Anson breached any fiduciary duty to Ghrist. Issue eight is sustained.

### 6.  Fraud and Negligent Misrepresentation (Issue Twelve)

The jury found that Ferguson, the Ferguson Firm, and Anson each committed fraud against Ghrist, and that Ferguson and the Ferguson Firm also committed negligent misrepresentation. These parties challenge the legal sufficiency of the

40

evidence to support these findings. The judgment includes recovery for fraud but not for negligent misrepresentation. As a result, it is not necessary to address the latter claim. It is also not necessary to determine whether the Ferguson Firm is liable for fraud because we have concluded above that it is liable for breach of contract, the claim on which Ghrist elected to recover. *See* Tex. R. App. P. 47.1

### a. Reliance

Reliance is an essential element of fraud. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018); *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). Although the Ferguson Parties broadly assert that the evidence is legally insufficient to support the jury's finding of fraud, reliance is the only element they specifically address.[10] Consequently, we restrict our analysis to this element.

Ghrist testified that he would not have moved receivership assets into MBH but for his understanding from Ferguson that Ghrist would be a 13.33% owner of MBH. There is also evidence that Ghrist was induced to enter the Separation Agreement by relying on Ferguson's representations that all expenses were already covered by collections and that monthly payments would begin in January. This

---

[10]The Ferguson Parties also state in their opening brief that there is no evidence of damages, but they merely refer to their argument under issue one. Similarly, they state that fraud and negligent misrepresentation are barred by the economic loss rule, but they merely refer to their argument under issue three. We have addressed issues one and three above. Finally, in their reply brief, they challenge Ghrist's factual statements concerning misrepresentations but they do not present any argument or authorities challenging the sufficiency of the evidence of that element of fraud.

evidence is sufficient to support the reliance element of fraud as asserted against Ferguson. The record does not, however, contain any evidence that Ghrist relied on any misrepresentation by Anson. Issue twelve is sustained as to Anson and overruled as to Ferguson.

### b. Disgorgement of fees

The jury found that the Ferguson Firm and Anson charged $56,462.12 in fees to the MBH Portfolio and that $7,528.09 of those fees should be disgorged to Ghrist. The Ferguson Parties contend that there is no evidence to support either of these findings.

Disgorgement is an equitable remedy for breach of fiduciary duty and fraud. *See Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 729 (Tex. 2016) (recognizing disgorgement as remedy for breach of fiduciary duty); *Robertson v. ADJ P'ship, Ltd.*, 204 S.W.3d 484, 494 (Tex. App.—Beaumont 2006, pet. denied) (recognizing disgorgement as remedy for fraud and breach of fiduciary duty). We have held above that the evidence is legally insufficient to support findings of breach of fiduciary duty or fraud against Anson. As a result, there is no basis upon which to order Anson to disgorge any fees charged to MBH.

Ghrist elected to recover against the Ferguson Firm for breach of contract, not breach of fiduciary duty. This is apparent both from Ghrist's statement to the trial court that he sought judgment against the firm only on the contract claim and from the award of attorney's fees contained in the judgment, which is expressly predicated

42

on the breach of contract claim. There is thus no basis upon which to order the Ferguson Firm to disgorge any fees it charged to MBH.

Issue twelve is sustained as to Anson's liability.

### 7. **Alter Ego** (Issue Thirteen)

Ferguson argues that he cannot be held individually liable for fraud because he is not a party to the Separation Agreement and because Ghrist abandoned his assertion of alter ego.

"Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof." *Anderson*, 550 S.W.3d at 614. But Ferguson has not cited any authority, and we are aware of none, that requires that the perpetrator of the fraud be a party to the resulting contract. Indeed, imposing such a requirement would permit the individual representatives of contracting entities to engage in fraudulent misrepresentations with impunity. It is sufficient in this case that Ferguson made misrepresentations on which Ghrist relied to induce Ghrist to enter the Separation Agreement. That Ferguson is not individually a party to that agreement does not negate his liability for fraud.

Ghrist's abandonment of the alter ego theory similarly does not relieve Ferguson of individual liability for his own misrepresentations. "The law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation." *Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.—

Corpus Christi–Edinburg 2002, pet. denied); *see Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002) (recognizing "Texas' longstanding rule that a corporate agent is personally liable for his own fraudulent or tortious acts"). It was therefore not necessary for Ghrist to obtain an alter ego finding to hold Ferguson personally liable for his own fraud.

Ferguson also argues that the lack of an alter ego finding precludes his individual liability for other causes of action. Because we uphold Ferguson's liability for fraud, we need not determine his liability, with or without a finding of alter ego, under any additional causes of action.

Issue thirteen is overruled.

### 8. Conversion (Issue Six)

The jury found that the Ferguson Firm, Ferguson, Anson, and MBH each committed conversion against Ghrist and that Ghrist suffered damages of $234,516.13 as a result. The Ferguson Parties challenge the legal sufficiency of the evidence to support these findings. We have previously determined that Ghrist's conversion claim is barred by the economic loss rule. As a result, it is not necessary to address the sufficiency of the evidence to support that claim. Issue six is overruled.

### 9. Quantum Meruit (Issue Ten)

The Ferguson Parties complain that there is legally insufficient evidence to support Ghrist's quantum meruit claim. But the judgment does not include any

recovery on this claim. It is therefore not necessary to resolve this issue in order to dispose of this appeal. *See* Tex. R. App. P. 47.1. Issue ten is overruled.

**10. Ghrist's Attorney's Fees** (Issue Seven)

### a. Actual damages

The trial court awarded Ghrist $119,000 in attorney's fees on his claim for breach of contract against the Ferguson Firm. The firm first challenges that award on the ground that Ghrist failed to establish breach of contract damages. But we have determined in the context of issue one that he did.

### b. Typographical error in the jury charge

The Ferguson Firm next argues that the jury could not award any fees for services performed by Caleb Moore, Ghrist's trial attorney. Moore conducted the entirety of the trial on Ghrist's behalf. He examined the witnesses, gave opening and closing arguments to the jury, engaged in bench conferences, and testified at length concerning his attorney's fees.

The firm contends that Ghrist was not entitled to recover Moore's fees because the question submitted to the jury was limited to fees for services performed by Ghrist. Question 21 asked, "What is a reasonable fee for the necessary services performed by Ian Ghrist/Ghrist Law Firm, attorney in this case pursuing claims for breach of the Separation Agreement against J. Michael Ferguson, P.C.?" In comparison, Question 41 asked, "What is a reasonable fee for the necessary services

45

performed by J. Michael Ferguson, P.C.*'s*, attorney in this case pursuing claims for breach of contract against Ian Ghrist/Ghrist Law Firm?" [Emphasis added.]

Ghrist contends that Question 21 contains a typographical error—"Ian Ghrist/Ghrist Law Firm" should be followed by an apostrophe and an "s," just as "J. Michael Ferguson, P.C." is followed by an apostrophe and an "s" in Question 41. Ghrist further contends that the jury was not confused or misled by this typographical error.

The jury charge as a whole, and portions of the record relating to that charge, support the conclusion that Question 21 contains a typographical error. Indeed, both Questions 21 and 41 contain an additional typographical error—the inclusion of a comma before the phrase "attorney in this case." In addition, the trial court instructed the jury that the charge contained two identified typographical errors and possibly others that had not been identified:

> Well, ladies and gentlemen of the jury, as you heard, it was a very long night for us last night. And so the charge, it's not perfect, but it's the best that we could do, but the Court, with the permission of counsel -- and I believe I do have the permission of counsel. *You're going to possibly find some other typographical errors*, but there are two things that I want to correct for you.

[Emphasis added.]

The court then informed the jury of corrections to Question 25 (concerning excuse for Ghrist's breach of contract) and Question 31 (concerning breach of fiduciary duty by Ghrist).

Giving the jury credit for exercising common sense in the face of the court's express warning that the charge might contain typographical errors and the fact that Questions 21 and 41 contain the same inquiry except for the apostrophe "s," we conclude that the jury was permitted to include Caleb Moore's fees in its attorney's fee award to Ghrist. *See Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 280 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) (noting that a "verdict should not be reversed based on a typographical error if the error is susceptible to commonsense detection by the jury").

### c. Award exceeding the attorney's bills

The Ferguson Firm's next complaint is that Ghrist's attorney's fee award exceeds the amount contained in the attorneys' billing records by $11,100. But the firm overlooks that Moore testified that he reviewed his and Ghrist's billing records, segregated fees for the breach of contract claim, reduced some of the fees, and concluded that the total amount of reasonable and necessary fees was $119,000—the precise amount awarded by the jury.

The jury was not asked to find the amount of attorney's fees billed to or incurred by Ghrist; it was asked to find a reasonable fee for the necessary services performed in pursuing Ghrist's breach of contract claim. "Texas courts have held that a party entitled to attorneys' fees need not show that the fees requested were actually incurred unless the statute authorizing a fee award requires such proof." *Van Dyke v. Builders W., Inc.*, 565 S.W.3d 336, 345–46 (Tex. App.—Houston [14th Dist.]

47

2018, pet. denied). Section 38.001 of the Texas Civil Practice and Remedies Code, the statute that authorizes the recovery of attorney's fees for a breach of contract claim, does not require proof that fees were actually incurred. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

We have expressly recognized that "[t]he existence of a fee contract and proof of fees actually incurred or paid are not prerequisites to the recovery of attorney's fees in Texas." *Gluck v. Hadlock*, No. 02–09–00411–CV, 2011 WL 944439, at *5 (Tex. App.—Fort Worth March 17, 2011, no pet.) (mem. op.) (quoting *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 520 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). The San Antonio Court of Appeals has similarly affirmed an attorney's fee award in circumstances where there was "no assertion that the attorney's fees requested or awarded in this case were unreasonable or unnecessary, only that they were not 'incurred.'" *Sloan v. Owners Ass'n Of Westfield, Inc.*, 167 S.W.3d 401, 405 (Tex. App.—San Antonio 2005, no pet.).

We conclude that Ghrist was entitled to recover reasonable and necessary attorney's fees regardless of whether the fees awarded by the jury were included in his and Moore's billing records.

The Ferguson Firm contends that some of the fees included in Ghrist's billing records were not reasonable and necessary. But Moore acknowledged that some of Ghrist's fees were not recoverable and testified that, in reaching the $119,000 figure, he reduced the hours included for Ghrist's time from 405 hours to 220 hours. The

48

Ferguson Firm does not demonstrate that the fees about which it complains are included in the $119,000 requested by and awarded to Ghrist. Also, it does not assert that $119,000 as a whole is an unreasonable or unnecessary fee for pursuing Ghrist's breach of contract claim.

Because the record supports the reasonableness and necessity of the attorney's fees awarded to Ghrist, and because the statute authorizing those fees does not require that they be actually incurred, we overrule the Ferguson Firm's complaint concerning the amount of the fee award.

### d. Improper contingent fee

The Ferguson Firm's fourth complaint relating to Ghrist's attorney's fee award is that Moore is improperly attempting to recover a contingent fee without having a contract for such a fee. Moore testified that his original fee agreement with Ghrist was based on an hourly rate but that they later entered a second fee agreement providing for a contingency fee on any recovery of exemplary damages.

Whether Moore had an enforceable contingent fee contract is of no consequence to this appeal. The jury did not award Ghrist any exemplary damages and so the contingency stated in Moore's second fee contract did not occur. As noted above, Moore testified that Ghrist's reasonable and necessary attorney's fees, based on an hourly rate for services rendered by Moore and by Ghrist, totaled $119,000. That is the precise amount awarded by the jury. Because the attorney's fee award to Ghrist

49

is not a contingent fee, the Ferguson Firm's complaint regarding the validity of a contingent fee contract presents no error and is overruled.

### e. Pro se attorney's fees

The Ferguson Firm next asserts that Ghrist cannot recover attorney's fees for his own services because pro se litigants are not entitled to recover such fees. *See Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 300 (Tex. 2011) (holding pro se litigant cannot recover attorney's fees under Texas Public Information Act because Act requires fees be incurred). But the supreme court has acknowledged that a law firm may recover fees for representation by its own attorney and that an attorney may recover fees for representing himself. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 488 (Tex. 2019).

We note that the Ferguson Firm raised the same argument concerning pro se attorney's fees in another case involving Ghrist, and this argument was rejected:

> We observe that other courts have held that a law firm can be awarded fees for representation by its own attorneys and that attorneys can be awarded fees for their own pro se representation. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 488 (Tex. 2019) (discussing arrangements encompassed within requirement that party must be represented by an attorney to secure an award of attorney's fees) (citing *Campbell, Athey & Zukowski v. Thomasson*, 863 F.2d 398, 400 (5th Cir. 1989)); *Beckstrom v. Gilmore*, 886 S.W.2d 845, 847 (Tex. App.—Eastland 1994, writ denied); *see also AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 520–21 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g) (discussing right to recover in-house attorney's fees). Therefore, we decline to reverse the trial court's award of attorney's fees on this basis.

*J. Michael Ferguson, PC v. Ghrist*, No. 07-20-00027-CV, 2020 WL 7549944, at \*11 (Tex. App.—Amarillo Dec. 21, 2020, no pet.) (mem. op.).[11]

In *Beckstrom*, one of the cases on which the Amarillo court relied, the Eastland Court of Appeals rejected a claim that a pro se attorney may not recover attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code. 886 S.W.2d at 847. That court reviewed the requirements for recovering fees under that statute, including the requirement that the claimant be represented by an attorney, and concluded there is no requirement that the attorney be a person other than the claimant. *Id.*

In accordance with the authorities cited above, we conclude that Ghrist, a licensed attorney, is entitled to recover attorney's fees under Chapter 38 for representing himself and his law firm. *See Rohrmoos Venture*, 578 S.W.3d at 488; *Ghrist*, 2020 WL 7549944, at \*11; *Beckstrom*, 886 S.W.2d at 847.

### f. Presentment of the claim

The Ferguson Firm's last complaint concerning attorney's fees is that Ghrist did not prove that he presented his claim as required by statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002. Section 38.002 requires that a party seeking attorney's fees

---

[11]This case was originally appealed to the Second Court of Appeals and was transferred to the Seventh Court of Appeals by the Texas Supreme Court. *Ghrist*, 2020 WL 7549944, at \*1 n.1. The Seventh Court of Appeals thus applied the Second Court of Appeals' precedent. *Id.* (citing Tex. R. App. P. 41.3).

"present the claim to the opposing party or to a duly authorized agent of the opposing party." *Id.* § 38.002(2). "The purpose of presentment is to allow the person against whom the claim is asserted an opportunity to pay a claim within thirty days after notice of the claim without incurring an obligation for attorneys' fees." *McDowell v. Bier*, No. 2-09-231-CV, 2010 WL 1427244, at *6 (Tex. App.—Fort Worth Apr. 8, 2010, no pet.) (mem. op.) (citing *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981)).

Presentment is not required to be in any particular form. *Town Ctr. Mall, L.P. v. Dyer*, No. 02-14-00268-CV, 2015 WL 5770583, at *7 (Tex. App.—Fort Worth Oct. 1, 2015, pet. denied) (mem. op.) (citing *France v. Am. Indem. Co.*, 648 S.W.2d 283, 286 (Tex. 1983)). "[A]ll that is necessary is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim." *Id.* (quoting *Standard Constructors, Inc. v. Chevron Chem. Co.*, 101 S.W.3d 619, 627 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)).

Plaintiffs' exhibit 9(c) is an email from Ghrist to Ferguson dated May 6, 2016, four months before he filed suit, in which Ghrist calculates the amounts he asserts are due based on the information available to him. He states that those amounts have not been paid and expressly demands payment. Ferguson's response to that email, which is contained in the same exhibit, shows that he recognized, but refused, that demand.

The Ferguson Firm argues that the May 6, 2016 email does not constitute a demand sufficient to satisfy Section 38.002 because it does not state a "just amount due" or provide that the firm has 30 days in which to pay. We disagree. The

52

requirement of presentment is liberally construed to promote its purpose. *Jones*, 614 S.W.2d at 100. Ghrist's May 6, 2016 was sufficient to assert a debt owed to him by the Ferguson Firm, to request that the firm pay that debt, and to give the firm the opportunity to avoid incurring an obligation to pay Ghrist's attorney's fees. No more was required to satisfy the statute and promote its purpose. *See Dyer*, 2015 WL 5770583, at *7; *McDowell*, 2010 WL 1427244, at *6.

Issue seven is overruled.

**11. Failure to Award Additional Relief to the Ferguson Firm** (Issue Fifteen)

The jury found that the Ferguson Firm sustained damages of $1,821.42 as a result of Ghrist's failure to comply with the Separation Agreement. The firm acknowledges that this is the amount of startup costs Ghrist owed the firm under paragraphs 19 and 20 of that agreement. It argues, though, that the jury's failure to award it additional damages is manifestly unjust because it conclusively proved it was entitled to recover $40,685.67 in other expenses.

The Ferguson Firm relies on evidence that Ghrist had not paid it any money to cover expenses referenced in paragraphs 11 and 14 of the Separation Agreement. Ghrist testified at trial that he had not written any checks to pay off any expenses identified in the agreement. But that does not end the matter because the jury could have concluded that Ghrist was not required by the agreement to pay all of those

53

expenses.[12]  We bear in mind that the most important consideration in interpreting any contract is the plain meaning of its operative language.  *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 149 (Tex. 2020).

Paragraph 11 of the Separation Agreement states:

6712 Plantation Rd., Forest Hill, Texas 76140

Ian Ghrist has a "Net Equity" interest in the property equal to 1/3 less

a. Anson's Deficiency Judgment including any legal cost to obtain judgment, filing fees, etc.
b. cost of acquiring the property with interest
c. cost [] incurred in remodeling and marketing the property with interest.

Ghrist shall receive the Net Equity interest if cash or 1/3 of cashflow from Net Equity in house.

Paragraph 11, by its plain language, calculates Ghrist's net equity in the Plantation property by accounting for certain costs associated with that property.  It does not require Ghrist to make any out-of-pocket payment of those costs.  For this reason, Ghrist's failure to pay those costs was not a breach of contract and those costs do not constitute breach of contract damages to the Ferguson Firm.

The same analysis holds true for paragraph 14.  That paragraph states:

The funds due to Ian Ghrist due to his 13.33% stake in MBH Real Estate, LLC and property recovered from Cause Nos. 236-269254-13 and 236-269254-13 will be paid.  The Law Office of J. Michael Ferguson, PC shall first collect $15,000 plus any filing fees incurred in

---

[12]Again, no party contends the Separation Agreement should be construed as a matter of law.

obtaining the original judgment plus interest on those funds as the judgment was obtained prior to Ghrist's involvement in the case.

The paragraph's plain language provides that the firm shall "collect" certain funds before the funds due to Ghrist are paid. It does not provide that Ghrist must pay those funds to the firm. Ghrist testified that he understood the provision as being in accordance with the parties' previous dealings—that the expenses would be taken out of the gross revenues before distributions were made. Based on this testimony and the plain language of paragraph 14, the jury could reasonably have interpreted this provision to mean that the firm was to recoup $15,000 and other expenses from collections made on the notes before Ghrist was entitled to receive his percentage of those collections. Thus, Ghrist's failure to pay the expenses noted in paragraph 14 was not a breach of contract and those expenses do not constitute breach of contract damages to the Ferguson Firm.

The evidence does not conclusively establish that the Ferguson Firm suffered breach of contract damages in addition to those found by the jury. Issue fifteen is overruled.

### 12. Failure to Award Relief to Anson (Issue Sixteen)

#### a. Preservation of error

The jury found that Ghrist failed to comply with a fiduciary duty owed to Anson but awarded $0 damages for that breach. Anson contends that this failure to award any damages is manifestly unjust and against the great weight and

55

preponderance of the evidence because it proved its damages as a matter of law. It appears that Anson is attempting to assert both legal and factual sufficiency challenges to the jury's failure to award damages. As explained above, however, Anson did not preserve its factual sufficiency challenge for review. *See* Tex. R. Civ. P. 324(b)(2); *Defterios*, 350 S.W.3d at 664.

### b. Bases for the jury's breach of fiduciary duty finding

Anson identifies two potential bases for the jury's finding that Ghrist breached its fiduciary duty to Anson. The first concerns the Coker Settlement under which Ferguson, the Ferguson Firm, and Anson agreed to pay approximately $525,000 to buy out Coker's interests in MBH and the MBH Portfolio. Ghrist, who had previously represented Anson, represented Coker during the settlement negotiations but did not obtain a conflict of interest waiver.

The second potential basis for the jury's breach of fiduciary duty finding concerns Ghrist representing Reynolds in her attempt to fire Anson and filing an administrative complaint against Anson.

### c. Actual damages for breach of fiduciary duty

Anson proclaims that it is entitled to judgment "in at least the amount of $250,000 related to the [Coker Settlement] and in actual damages for the loss of income caused by Ghrist." Anson provides two record citations in support of this statement. The first citation is to the following testimony by Ferguson:

56

Q. So I just wanted to get some categories of your damages. The loss of the benefit of the bargain on Mr. Coker, that's how much you paid for that contract?

A. That's correct, the 525,000.

The second record citation is to testimony by Ferguson that his law firm's revenues had fallen by over $250,000 because of the litigation with Ghrist.

The Ferguson Firm's loss of revenue is no evidence of any damages incurred by Anson. And the mere fact that Anson participated in buying out Coker's interests in MBH and the MBH Portfolio does not establish that Anson incurred any actual damages. In fact, the evidence is that Ferguson, not Anson, paid Coker the $525,000 buyout price. Further, Anson does not identify any evidence of actual damages associated with Ghrist's representation of Reynolds or his filing an administrative complaint against Anson.

Finally, the jury was asked to find the amount of damages, if any, that were proximately caused by Ghrist's breach of fiduciary duty. Thus, to establish error in the jury's $0 answer, Anson was required to show not only that it incurred actual damages but that those damages were proximately caused by Ghrist's breach. Anson does not, however, address the causation element in its brief or identify any evidence that would support a finding of causation.

Anson has not demonstrated that it conclusively proved its entitlement to actual damages for breach of fiduciary duty.

### d. Disgorgement of legal fees

The jury found that Ghrist charged Coker $0 in attorney's fees and that he should be ordered to disgorge $0 of that amount. Anson contends that it conclusively proved that Ghrist charged Coker $50,000 to represent him against Anson and that the trial court erred by refusing to order Ghrist to disgorge $50,000 in attorney's fees.

It is undisputed that Coker paid Ghrist $50,000 during the period that Coker and Ferguson were negotiating the Coker Settlement. Coker testified that he paid Ghrist that sum because Ghrist had "done a tremendous amount of work" for him, he felt obligated to pay Ghrist, and $50,000 was "the number [he] arrived at." When asked whether the payment was for Ghrist representing him in settling with Ferguson, Coker testified that it was for a "body of work" Ghrist had performed for him and that the payment was in Coker's discretion, not because of a contractual obligation.

The specific question to the jury was whether Ghrist *charged* Coker any fees. Coker's testimony that he voluntarily paid Ghrist an amount of his own choosing supports the jury's finding that Ghrist did not charge Coker any fees. Whether we would have answered the question in the same manner is of no consequence; the jurors were the sole judges of the witnesses' credibility and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819.

In addition, whether to order disgorgement of fees was a matter within the trial court's discretion. *See Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008) (stating that trial court's ruling on equitable relief is reviewed for abuse of

58

discretion); *Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex. 1999) (recognizing fee forfeiture as equitable relief). As noted above, the jury may have based its breach of fiduciary duty finding on Ghrist's representation of Reynolds rather than his representation of Coker. In that case, there would be no basis upon which to order Ghrist to disgorge fees received from Coker. As a result, we cannot conclude that the trial court abused its discretion by refusing to order that Ghrist disgorge $50,000.

Issue sixteen is overruled.

## E.     **Ownership Issues** (Issue Five)

Question 45 asked whether Ferguson and Ghrist agreed prior to the Separation Agreement that Ghrist had a 13.33% ownership interest in the MBH Portfolio. Question 46 asked whether the Ferguson Firm and Ghrist agreed in the Separation Agreement that Ghrist had a 13.33% ownership interest in MBH and property recovered from the Boles and Diffenwierth lawsuits. The jury answered both questions, "Yes."

The Ferguson Parties urge that the trial court erred by "permitting" Ghrist to assert ownership claims in MBH and the MBH Portfolio and by submitting Questions 45 and 46. These are, in essence, assertions of legal insufficiency of the evidence because the trial court had no discretion to refuse to submit pleaded claims that were supported by any legally cognizable evidence. *See* Tex. R. Civ. P. 278 (providing court shall submit questions raised by pleadings and evidence). The Ferguson Parties also

59

assert that the ownership issues are barred by the merger clause and the Statute of Frauds.

It is not necessary to determine whether the trial court erred by submitting Questions 45 and 46 because the Ferguson Parties have not demonstrated any such error is reversible. *See* Tex. R. App. P. 44.1 (providing that error is reversible if it probably caused rendition of an improper judgment). Ghrist's recovery, as provided in the judgment, is purely monetary. The judgment not only does not award any ownership interests to Ghrist, it does not mention ownership at all. In short, disregarding the jury's answers to Questions 45 and 46 would have no impact on the judgment and furnishes no cause for reversing that judgment. Issue five is overruled.

## F. The Ferguson Firm's Attorney's Fees (Issue Fourteen)

The Ferguson Firm argues that the trial court erred by failing to award it attorney's fees. Whether attorney's fees are available under a particular statute is a question of law which we review de novo. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam); *Taylor Elec. Servs., Inc. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 532 (Tex. App.—Fort Worth 2005, no pet.).

The statute here at issue is Section 38.001 of the Texas Civil Practice and Remedies Code. Under that statute, a party may recover attorney's fees if it prevails on a cause of action for which attorney's fees are recoverable and recovers damages. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001; *Green Int'l*, 951 S.W.2d at 390. The Ferguson Firm urges that it is a prevailing party entitled to recover attorney's fees

60

because it obtained findings that Ghrist breached the Separation Agreement and that breach caused the firm $1,821.42 in damages. Ghrist responds that the firm is not entitled to recover attorney's fees because its recovery was fully offset by damages awarded to Ghrist.

The supreme court has held that, although a prevailing party must recover damages to be entitled to recover its attorney's fees, it need not obtain a net recovery. *McKinley v. Drozd*, 685 S.W.2d 7, 10–11 (Tex. 1985); *see Matthews v. Candlewood Builders, Inc.*, 685 S.W.2d 649, 650 (Tex. 1985). The court specifically applied this principle to the recovery of fees under the predecessor statute to Section 38.001. *See Drozd*, 685 S.W.2d at 10–11. Thus, the mere fact that the Ferguson Firm's damages were wholly offset by damages awarded to Ghrist does not, in itself, preclude the firm from recovering its attorney's fees.

Ghrist also contends that the firm was not entitled to recover its attorney's fees because the claim on which the jury awarded damages to the firm was uncontested. We addressed a similar situation in *Taylor Electrical Services, Inc. v. Armstrong Electrical Supply Co.*, 167 S.W.3d 522 (Tex. App.—Fort Worth 2005, no pet.). While recognizing that the supreme court in *Drozd* had abolished the "net recovery rule," we stated that it was necessary to determine which party prevailed on the main issue in the case to resolve whether a party was entitled to attorney's fees. *Id.* at 532–33. As we explained, "[t]he prevailing party is the party who is vindicated by the judgment rendered. The determination of who is the prevailing party should focus on who was

61

successful on the merits. If multiple parties receive judgment, the party which received judgment on the 'main issue' is the prevailing party." *Id.* (citations and internal quotation marks omitted).

Taylor, a contractor, sued Armstrong, a subcontractor, for breach of contract, fraud, and violation of the DTPA. *Id.* at 525. The factual basis of the claims was Armstrong's failure to timely deliver certain materials. *Id.* Taylor paid Armstrong but deducted $6,110 because of the late deliveries. *Id.* at 525. Armstrong contended that Taylor still owed it $6,169.05 at the time of trial. *Id.* at 525–26. The jury awarded Armstrong damages of $6,110, which was offset by its award to Taylor of $27,500. *Id.* at 533. The trial court awarded Armstrong attorney's fees of over $57,000. *Id.* at 532. On appeal, the parties disputed whether Armstrong was a prevailing party entitled to recover its attorney's fees.

We first noted that the jury found that Taylor was successful in virtually all of its claims against Armstrong. *See id.* at 533. We also noted that while Taylor had withheld a portion of the amounts Armstrong had billed under its contracts, it "never contested liability for or compensability of the balance, only whether there would ultimately be any money due Armstrong in light of Taylor's claims for breach of contract and liquidated damages." *Id.*

We concluded that, "[b]ecause Taylor conceded the issue of the amount that it had not yet paid to Armstrong, it is difficult to see how Armstrong incurred attorney's fees in *pursuing* its claim against Taylor." *Id.* at 534 (emphasis in original). We further

62

concluded that, considering the litigation in its entirety, Taylor was successful in the main issue litigated. *Id.* As a result, we held that "Taylor was the prevailing party entitled to recover attorney's fees under section 38.001 and that Armstrong was not." *Id.*

The present case is governed by *Taylor*. The jury's findings reflect that Ghrist was successful in virtually all of his claims against the Ferguson Firm. In addition, the record shows that Ghrist did not contest that he owed the Ferguson Firm $1,821.42. Rather, as in *Taylor*, he withheld that amount as an offset in light of his own claims for breach of contract. *See id.* at 533. That precise amount is repeatedly identified in Ghrist's damages calculations as being owed to the firm.

Considering the litigation in its entirety, we conclude that Ghrist was successful in the main issue litigated with the Ferguson Firm—that the firm breached its obligations under the Separation Agreement to make substantial payments to Ghrist. We therefore hold that Ghrist was a prevailing party entitled to attorney's fees under Section 38.001 and the Ferguson Firm was not. Issue fourteen is overruled.

## G.    **Motions for New Trial** (Issue Seventeen)

In their final issue, the Ferguson Parties assert that the trial court erred by denying their requests for a new trial which were incorporated into their numerous JNOV motions. They present no argument in support of this issue other than making general references to the JNOV motions and improperly attempting to incorporate them by reference. *See Allen*, 236 S.W.3d at 325 (noting brief cannot simply refer to

63

trial court arguments); *Guerrero*, 977 S.W.2d at 832–33 (rejecting incorporation by reference of trial court arguments).

Issue seventeen is inadequately briefed and is overruled. *See* Tex. R. App. P. 38.1(i) (requiring that appellant's brief contain concise argument with citation to authorities and the record).

## IV. GHRIST'S APPEAL

### A.      **Factual Sufficiency of the Evidence** (Cross-Issue One)

In his first issue on cross-appeal, Ghrist challenges the factual sufficiency of the evidence to support the jury's finding that he breached the Separation Agreement.[13] A point in a motion for new trial is a prerequisite to an appellate complaint that the evidence is factually insufficient to support a jury finding. Tex. R. Civ. P. 324(b)(2). Ghrist did not file a motion for new trial; his complaint of factual insufficiency is not preserved for our review. *See id.*; *Defterios*, 350 S.W.3d at 664. Cross-issue one is overruled.

### B.      **Offset** (Cross-Issue Two)

In his second issue on cross-appeal, Ghrist contends that he did not breach the Separation Agreement as a matter of law because he was entitled to offset the

---

[13]The Ferguson Parties argue that there is evidence to support a finding that Ghrist breached a Rule 11 agreement. We need not address this argument because the jury's breach of contract finding is expressly limited to breach of the Separation Agreement.

amounts he owed the Ferguson Firm for his own firm's startup and operating costs by the amount the firm owed him under the fee sharing and Separation Agreements.

The supreme court explained the principle of offset (or setoff) in *Bandy v. First State Bank, Overton*, 835 S.W.2d 609 (Tex. 1992) (op. on reh'g):

> The effect of setoff was to allow a defendant in a suit for a debt to raise a debt owed by the plaintiff to the defendant as a defense or counterclaim. If the setoff was allowed the amount that the plaintiff would recover from the defendant was reduced by the amount that the plaintiff owed the defendant.

*Id.* at 618.

It is apparent from this explanation that the right of offset, when properly raised, simply affects the judgment amount one party may be required to pay another. This is precisely what the trial court accomplished in the judgment by ordering that the Ferguson Firm's damages for Ghrist's breach of contract "shall be deducted from the amounts awarded [to Ghrist] in the judgment because of the offset or setoff as permitted by law."

Ghrist argues, though, that the fact that he is not required to pay the firm means that he was never in breach of his contract with the firm. More specifically, he argues that because the firm owed him more than he owed it, he was entitled to extrajudicially offset those amounts and negate his contractual obligation to pay. Having unilaterally negated that obligation, he urges, his failure to pay the firm is not a breach of contract.

Ghrist relies on *Bandy* for his "offsetting damages means no breach" argument. The supreme court there recognized that a bank is entitled to extrajudicially offset a customer's debts against the customer's deposits. *See* 835 S.W.2d at 618–19. But the bank's right to do so derives from a "mutual debtor/creditor relationship, which occurs when a depositor also borrows money from the bank," a situation that does not exist in this case. *Id.* at 619. Nothing in *Bandy* supports Ghrist's assertion that his right to offset precludes a finding that he committed a breach of contract. In fact, a second case on which Ghrist relies—*Trueheart v. Braselton*, 875 S.W.2d 412 (Tex. App.—Corpus Christi–Edinburgh 1994, no writ)—refutes that contention.

The court in *Trueheart* explained that "[s]et-off is the doctrine of bringing into the presence of each other the obligation of A to B and B to A and *by the judicial action of the court* making each obligation extinguish the other." *Id.* at 415 (emphasis added). This explanation demonstrates that a party has no unilateral, extrajudicial right to determine that it has no obligation to the other because it believes the other party's obligation to exceed its own. On the contrary, both parties owe obligations which are ultimately determined "by the judicial action of the court." *Id.*

The fundamental flaw in Ghrist's argument is that it confuses an obligation to pay with satisfaction of that obligation. As determined by the jury, Ghrist had a contractual obligation to pay the Firm $1,821.42 and his failure to pay that amount was a breach of contract. The Firm had a contractual obligation to pay Ghrist

66

$104,700.83[14] and its failure to pay that amount was a breach of contract. By deducting the amount Ghrist owed the Ferguson Firm from the amount the firm owed Ghrist, the judgment satisfied Ghrist's obligation to the firm. But the fact that the obligation was satisfied does not mean it never existed. Stated another way, the fact that the firm's breach of contract damages were satisfied by offset does not mean that Ghrist did not commit a breach of contract.

Our holding in this regard does not conflict with our holding above that the Ferguson Firm is not entitled to recover attorney's fees. Our conclusion regarding attorney's fees is based on the fact that the firm did not prevail on the main issue litigated between it and Ghrist. That analysis does not negate the fact that the firm established that Ghrist was contractually required to pay it $1,821.42 and did not fulfill that requirement. Indeed, by deducting that sum from his calculation of damages, Ghrist acknowledged not only that he owed it but that he had not paid it. In essence, Ghrist agreed that he was in breach of the Separation Agreement.

We conclude that the trial court did not err by refusing to disregard the jury's finding that Ghrist breached the Separation Agreement. Cross-issue two is overruled.

---

[14]This is the amount the jury awarded for past benefit of the bargain damages. The trial court reduced that amount to $96,605.16 based on the parties' agreements.

67

**C. Double Recovery** (Cross-Issue Three)

Finally, Ghrist argues that deducting $1,821.42 from his recovery against the Ferguson Parties constitutes a double recovery to those parties because his damages calculation already accounted for that sum. The record does not reflect, however, that Ghrist preserved this error by raising it in the trial court. *See* Tex. R. App. P. 33.1.

Ghrist urges that the "setoff issue was raised in post-trial motions" and specifically cites to his proposed judgment and his second amended motion for judgment. Both of those documents assert arguments based on a right of offset. But neither document contains any assertion of a potential double recovery, and we have not found anywhere else in the record that Ghrist brought this complaint to the attention of the trial court. Cross-issue three is waived. *See id.*

## V. CONCLUSION

The only claim Ghrist submitted to the jury against MBH was for conversion. Because we hold that that claim is barred by the economic loss rule, MBH is entitled to rendition of a take-nothing judgment.

Ghrist obtained favorable findings on his claims against Anson for breach of fiduciary duty, conversion, and fraud. Because we hold that there is legally insufficient evidence to support the findings of breach of fiduciary duty and fraud, and because the conversion claim is barred by the economic loss rule, Anson is entitled to rendition of a take-nothing judgment.

We uphold Ferguson's individual liability for fraud and Ghrist's recovery of damages related to that claim.

Finally, we uphold the Ferguson Firm's liability for breach of contract and Ghrist's recovery of damages and attorney's fees related to that claim. But because Ghrist has elected to recover against the firm for breach of contract rather than for breach of fiduciary duty, that portion of the judgment requiring the firm to disgorge $7,528.09 is reversed.

In conclusion, the trial court's judgment is reversed insofar as it grants relief against Anson and MBH. Judgment is rendered that Ghrist take nothing on his claims against those parties. The judgment is modified to delete the requirement that the Ferguson Firm disgorge $7,528.09 and to reflect that the total amount of damages awarded against the firm is $212,586.68. The judgment is otherwise affirmed.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: May 20, 2021